**UNITED STATES of America, Plaintiff–Appellant,**

v.

**Paul A. CARBAUGH, Defendant– Appellee.**

No. 97–2311.

United States Court of Appeals, Seventh Circuit.

Argued Nov. 13, 1997.

Decided April 14, 1998.

Rehearing and Suggestion for Rehearing En Banc Denied June 30, 1998.

---

On September 11, 1996, defendant entered a bank, placed a bag on the counter and declared, "This is a robbery." The teller asked, "Are you for real?" Defendant responded, "This is a robbery. Put the money in the bag. I have a gun." According to the teller, as the defendant announced that he had a gun, he also moved his hand toward his waist. The teller saw a bulge in the defendant's shirt near his waist and she thought the bulge was a gun. The defendant departed from the bank with a bag containing $2600. He was arrested shortly thereafter and pled guilty to bank robbery.

At sentencing, defendant admitted to saying, "I have a gun," but denied making any downward gesture. Although the district judge invited the parties to address the factual dispute regarding the existence or nature of a gesture, neither party offered testimony on that point. The district court assumed, for purposes of sentencing, that the defendant made some downward gesture but concluded that the words, "I have a gun" plus the gesture fall short of an "express threat of death" under U.S.S.G. § 2B3.1(b)(2)(F).

 The government, as the party seeking the enhancement, had the burden of proving the factual basis for the increase by a preponderance of the evidence. *See United States v. Wyatt,* 102 F.3d 241, 246 (7th Cir. 1996); *United States v. Foutris,* 966 F.2d 1158, 1160 (7th Cir.1992). Since the government declined to carry its burden, we assume that the defendant made no gesture. Accordingly, we must decide whether the words alone merit the enhancement.

 Whether a robber's statement can constitute an express threat of death involves the legal interpretation of a sentencing guideline which we review de novo. *See United States v. Jones,* 83 F.3d 927, 929 (7th Cir.1996). If it can constitute a death threat, then we must decide whether the robber's statement constituted such a threat in this case. The latter issue is a fact question, which we review for clear error. "This court must give 'due deference' to the district court's application of the Guidelines to the

Helene B. Greenwald (argued), Kaarina Salovaara, Office of the United States Attorney, Criminal Division, Chicago, IL, for Plaintiff–Appellant.

Andrea P. Taylor (argued), Office of the Federal Defender Program, Chicago, IL, for Defendant–Appellee.

Before ESCHBACH, RIPPLE, and ROVNER, Circuit Judges.

ESCHBACH, Circuit Judge.

In this case the parties ask us to decide whether the words "I have a gun" constitute a "threat of death" for purposes of U.S.S.G. § 2B3.1(b)(2)(F) when made in the context of a bank robbery.

facts." *United States v. Hunn*, 24 F.3d 994, 998 (7th Cir.1994).

We address the legal question first—whether "I have a gun" can constitute a threat of death. Until November 1, 1997, the Sentencing Guidelines required a two-level enhancement for a robber who makes an express threat of death. The Circuits were split on the question whether an express threat of death must, in fact, be express. *Compare United States. v. Canzater*, 994 F.2d 773, 775 (11th Cir.1993) (stating that the enhancement "is appropriate only when the threat of death is express, meaning directly or distinctly stated, and not when the threat is implied or left to inference") *with United States v. Robinson*, 86 F.3d 1197, 1203 (D.C.Cir.1996) ("[W]e have concluded that express threats of death can be based on inferences."). The majority of circuits have taken the latter approach. *United States v. Figueroa*, 105 F.3d 874, 877 (3d Cir.1997) ("The majority of the courts of appeals … have held that the defendant can make an express threat of death without explicitly threatening to *kill* the victim."). Our Circuit has adopted the majority approach—implied threats of death fall within the meaning of the guideline. *See United States v. Hunn*, 24 F.3d at 994.

Effective November 1, 1997, the Sentencing Commission omitted the word "express" from the Guideline; the guideline now applies where there is simply "a threat of death." The Commission also added a sentence to the commentary stating that "the defendant does not have to state expressly his intent to kill the victim in order for the enhancement to apply." U.S.S.G. § 2B3.1 comment. (n.6). The amendment "addresses a circuit court conflict" and "adopts the majority appellate view which holds that the enhancement applies when the combination of the defendant's actions and words would instill in a reasonable [victim teller] a greater amount of fear than necessary to commit the robbery." U.S.S.G. Appendix C, amendment 552.

Thus, an issue is raised whether to apply only the foregoing guideline or to consider the amended version as well. "[I]f a court applies an earlier edition of the Guidelines Manual, the court shall consider subsequent amendments, to the extent that such amendments are clarifying rather than substantive changes." U.S.S.G. § 1B1.11(b)(2); *see United States v. Goudy*, 78 F.3d 309, 314 (7th Cir.1996). We need not decide whether the amendment is technically substantive or clarifying because the amendment adopted our Circuit's view, and therefore, our analysis remains the same before and after November 1, 1997.[1]

No cases in our circuit are precisely on point. In *United States v. Hunn*, 24 F.3d at 994, the defendant entered a bank and handed the teller a note that read "This is a hold-up. I have a gun," while keeping his right hand in a coat pocket, pointed at the teller. We held that the defendant had made an express threat of death because "a reasonable victim could understand Hunn's message loud and clear as a death-threat." *Id.* at 998. Likewise, in *United States v. Bomski*, 125 F.3d 1115 (7th Cir.1997), the defendant placed a bag on the counter and said, "this is a bomb," and "give me all of your money." We held that the defendant had made an express threat of death.

The defendant's threat here poses a slightly different question than that raised by Hunn's gun and Bomski's bomb. In those cases, the defendant's statement was accompanied with a threatening gesture. In *Hunn* there was a finger pointed through a coat pocket,[2] and in *Bomski* there was a purport-

---

1. We note that the new commentary makes one other change in terminology. The earlier version stated that "the intent of the underlying provision is to provide an increased offense level for cases in which the offender(s) engaged in conduct that would instill in a reasonable [victim teller], *significantly greater fear than that necessary to constitute an element of the offense of robbery.*" U.S.S.G. § 2B3.1(b)(2) comment. (n.6) (emphasis added). The italicized portion has been deleted and replaced with "a fear of death." We do not think the new terminology alters the outcome in this case.

2. We acknowledge *Bomski* dicta stating, "we held in *United States v. Hunn* that the statement 'I have a gun' can satisfy the Guidelines' requirement." *Bomski*, 125 F.3d at 1118 (citation omitted). However, *Hunn* repeatedly and unmistakably relied on the fact that the robber also pointed the (imaginary) gun at the teller. *See Hunn*, 24 F.3d at 997 ("We believe that pointing

ed bomb placed on the counter. These gestures combined with the verbal statements would succeed in causing a reasonable teller to fear for his life.

In *United States v. Jones*, 83 F.3d 927, 929 (7th Cir.1996), the defendant entered a bank and stated "(1) that he had a gun, (2) that it was 'no joke,' (3) that the tellers were 'not to pull any alarms,' for if they did (4) 'I'll use it.'" *Id.* We held that these statements constituted an express threat of death because "Jones' statements were sufficient to put a reasonable person in the teller's position in fear of death ..."[3] *Id.*

Carbaugh argues that his case is different than *Jones* because Carbaugh merely stated that he *had* a gun rather than threatening to *use* it. "I'll use it," he claims, makes all the difference because it involves a statement of willingness inherent in a threat. At Carbaugh's sentencing hearing, the district court accepted this distinction:

> In this case the defendant's statement that he had a gun without any other threatening statement, in my opinion, does not rise to the level of the threatening statement in *Jones* and *Robinson*. In both of those cases the bank robbers explicitly threatened to use their guns against the tellers if the tellers did not do what the robbers ordered.
>
> In contrast, [Carbaugh] did not express any readiness or willingness to use his weapon against the teller. He simply stated that he had a gun.

Sentencing Tr. at 17.

■ We disagree with the district court's conclusion. A threat of death need not include a statement of readiness or willingness

to use the gun. True, the statement "I have a gun," when viewed grammatically is merely a declaration of possession. But we do not examine the statement grammatically, or even from the robber's perspective. Instead, the proper focus is on the perspective of the reasonable teller. *See Hunn*, 24 F.3d at 998 (stating that court "should apply an objective test, what a 'reasonable' victim would read from the robber's conduct"). If a robber makes this statement because he thinks it will increase the teller's level of fear, we agree with his assessment.[4] A reasonable teller would ordinarily experience a fear of being shot when the robber confronting her announces he has a gun. Therefore, we hold that the statement "I have a gun" can constitute a threat of death under U.S.S.G. § 2B3.1(b)(2)(F).

Our conclusion accords with the Third Circuit's result in *United States v. Figueroa*, 105 F.3d 874 (3d Cir.1997). There, the court also held that a robber's note saying "I have a gun" constitutes an express threat of death. "Even if there is no gun, or if the defendant actually never would use the gun, the victim alerted that there is a gun is justified in believing it exists and will be used, and that his or her life is therefore in danger." *Id.* at 880.

■ Having determined that "I have a gun" can be a threat of death, we must now consider whether the statement is such a threat in this case. It is conceivable that unusual mitigating circumstances accompanying this statement could deprive the words of their plain meaning.

Here, the defendant placed a bag on the bank counter and declared, "This is a rob-

---

one's hand, hidden in a coat so as to imitate the presence of a handgun aimed at another, is well within the plain text of § 2B3.1(b)(2)(F)."); *id.* ("We ... hold that a bank robber's pointing his hand through his coat pocket, while claiming to have a gun, can be a sentence-enhancing death threat expression under the plain text of Guideline § 2B3.1(b)(2)(F)."); *id.* at 999 ("The combination of Hunn's note ... and his gesture that he was pointing a gun through his right pocket at the teller, comprised an express threat that if she disobeyed she would be shot."). *Hunn* clearly did not hold that the mere words "I have a gun" can constitute an express threat of death.

3. The government also cites *United States v. Robinson*, 20 F.3d 270 (7th Cir.1994) for the proposition that "I have a gun and am not afraid to use it," warrants the enhancement. In fact, Robinson made other threatening statements during his five robberies. *See id.* at 276 ("In a third robbery, the defendant said she had a gun and would 'spray' the teller....."). Accordingly, *Robinson* is less relevant than the government contends.

4. Carbaugh, for example, who had no gun during the actual robbery nonetheless claimed to have a gun. PSR at 2.

bery." When the teller asked, "Are you for real?" defendant responded, "This is a robbery. Put the money in the bag. I have a gun." There were no circumstances here that tend to strip the words of their ordinary and expected meaning. In fact, just the opposite is true. When the teller tested Carbaugh's sincerity, Carbaugh alluded to the gun as if to emphasize the full and urgent import of his words. Accordingly, we have no doubt that Carbaugh's statement would cause a reasonable teller to fear death. Therefore, the district court improperly declined to enhance Carbaugh's sentence under U.S.S.G. § 2B3.1(b)(2)(F).

REVERSED AND REMANDED.

ILANA DIAMOND ROVNER, Circuit Judge, dissenting.

I must part ways with my two learned and esteemed colleagues today because I simply cannot agree that, as a matter of law, the defendant *expressly* threatened the bank teller with death by saying "I have a gun" without either doing or saying anything more. At the very least, I believe it was within the district court's discretion to conclude, on the facts before it, that Carbaugh's statement did not amount to an express threat to kill the teller.

When the district court sentenced Carbaugh last year, the robbery guideline mandated a two-level increase in the defendant's offense level "if an express threat of death was made." U.S.S.G. § 2B3.1(b)(2)(F) (Nov. 1995). The commentary explained what was meant by "an express threat of death":

> An "express threat of death," as used in subsection (b)(2)(F), may be in the form of an oral or written statement, act, gesture, or combination thereof. For example, an oral or written demand using words such as "Give me the money or I will kill you", "Give me the money or I will pull the pin on the grenade I have in my pocket", "Give me the money or I will shoot you", "Give me your money or else (where the defendant draws his hand across his throat in a slashing motion)", or "Give me the money

or you are dead" would constitute an express threat of death. The court should consider that the intent of the underlying provision is to provide an increased offense level for cases in which the offender(s) engaged in conduct that would instill in a reasonable person, who is a victim of the offense, "significantly greater fear than that necessary to constitute an element of the offense of robbery."

*Id.* comment. (n.6).

It certainly is the law of this circuit that the statement "I have a gun," when coupled with additional words or conduct, *can* constitute an "express threat of death" for purposes of the robbery guideline. *United States v. Hunn*, 24 F.3d 994, 997–98 (7th Cir.1994); *see also United States v. Jones*, 83 F.3d 927, 929 (7th Cir.1996); *United States v. Robinson*, 20 F.3d 270, 276 (7th Cir.1994). Might "I have a gun," standing alone, be sufficient to constitute an express threat of death? *United States v. Bomski*, 125 F.3d 1115, 1118 (7th Cir.1997), *cert. denied*, —— U.S. ——, 118 S.Ct. 898, 139 L.Ed.2d 883, and *cert. denied sub nom. Ferguson v. United States*, —— U.S. ——, 118 S.Ct. 1091, 140 L.Ed.2d 147 (1998), suggests that it can be. But *Bomski* cites *Hunn* for that proposition, and *Hunn* said nothing of the sort. As Judge Eschbach points out (ante at 793–94 n. 2), the fact that the bank robber in *Hunn* made a pointing gesture through the pocket of his coat when he said that he was armed was essential to the court's holding. *See* 24 F.3d at 997 ("We ... hold that a bank robber's *pointing his hand through his coat pocket*, while claiming to have a gun, can be a sentence-enhancing, death-threat expression under the plain text of Guideline § 2B3.1(b)(2)(F).") (italics mine); *id.* at 998 ("Having determined that Hunn's *non-verbal act* may be an expressed death-threat under § 2B3.1(b)(2)(F), we next must evaluate the district court's factual findings.") (italics mine); id. at 999 ("Hunn's December 28th death-threat constituted a union of words and gestures") (footnote omitted) (italics mine).[1] I can envision some circumstances in

---

**1.** The bank robber in *Bomski* said that he had a bomb, not a gun. The fact that he claimed to have a weapon of mass destruction may alone distinguish *Bomski*. *See* 125 F.3d at 1118. There is something more, however: the robber placed a bag on the counter as he announced

which "I have a gun" might alone qualify as an express threat of death. If, for example, a bank teller responded to the robber's demand for money with a plea for him not to kill her and the robber replied "Well then, you'd better do as I say, because I have a gun," I think that the robber's statement reasonably could be construed as an express threat of death. In that scenario, the context of the statement imbues the declaration of possession with the threatening quality that the guideline required. Absent that context, the words "I have a gun," standing alone, would not constitute an express threat to kill; only an additional statement or gesture—the finger drawn across the throat, for example (*see* Application Note 6)—could convey that message with the particularity that the guideline mandated. *See, e.g., Jones,* 83 F.3d at 929 (robber told bank tellers that he had a gun, that it was "no joke," and warned them not to sound any alarm *or he would use the gun*); *Robinson,* 20 F.3d at 276 (robber stated, *inter alia,* "I have a gun and *am not afraid to use it*") (emphasis supplied). I certainly agree that "I have a gun" would cause any reasonable teller to fear for her safety. *See ante* at 794. But a teller would likely experience that fear anytime she knows or suspects that a robber is armed, and instilling fear in the victim is an element of robbery. 18 U.S.C. § 2113(a) (defining bank robbery to mean, in part, the taking of money by force or violence or intimidation); *see Hunn,* 24 F.3d at 999 (Easterbrook, J., dissenting), citing *United States v. Ray,* 21 F.3d 1134 (D.C.Cir.1994), *cert. denied,* 516 U.S. 894, 116 S.Ct. 246, 133 L.Ed.2d 172 (1995). The stated purpose of the two-level enhancement for express death threats was to distinguish conduct which instilled "significantly greater fear than that necessary to constitute an element of the offense of robbery." § 2B3.1(b)(2)(F) comment. (n.6). I am not convinced that "I have a gun," unaccompanied by other threatening conduct, serves such a distinguishing function.

What is perhaps more important to emphasize is that our precedents on this subject have never said that "I have a gun," whatever the surrounding circumstances, invariably or even usually qualifies as an "express threat of death." In *Hunn,* we took considerable care to say simply that the statement, coupled with a pointing gesture, *might* be a threat of death. *See* 24 F.3d at 997 ("We ... hold that a bank robber's pointing his hand through his coat pocket, while claiming to have a gun, *can* be a sentence-enhancing, death-threat expression under the plain text of Guideline § 2B3.1(b)(2)(F).") (italics mine); *id.* at 998 ("Thus, we conclude that Hunn's conduct *may* be of the type that is significantly greater than <u>necessary</u> to constitute an element of the offense of bank robbery.") (italics mine); *id.* ("Having determined that Hunn's non-verbal act *may* be an expressed death-threat under § 2B3.1(b)(2)(F), we next must evaluate the district court's factual findings.") (italics mine). Even our opinion in *Bomski,* which puts an extremely expansive spin on *Hunn,* says only that "the statement 'I have a gun' *can* satisfy the Guidelines' requirement." 125 F.3d at 1118 (italics mine). By saying that the statement can constitute an express threat of death, we have left room for the possibility that the district court might reasonably conclude that "I have a gun" does not amount to an express threat to kill, depending on the surrounding facts. Indeed, upon recognizing, as my brothers do, that we owe "due deference" to the district court's application of the guidelines to the facts of the case, 18 U.S.C. § 3742(e), the limits of our prior cases become clear. At the very most, we have held that "I have a gun" *can* be an express threat of death, not that it necessarily is under any particular set of circumstances. The law of this circuit, coupled with the deference commanded by section 3742(e), grants the district courts ample room to make different judgments on this question even on the same set of facts.

None of the accompanying circumstances noted in our previous "I have a gun" cases was present here. Carbaugh did not threaten to use the gun, nor is there proof in the record that he made any kind of gesture that

---

"this is a bomb," a gesture arguably equivalent to the kind of pointing gesture accompanying the statement in *Hunn.* *See ante* at 793–794.

conveyed a threat nonverbally. Carbaugh may have made some type of pointing gesture when he said that he had a gun, but because the government declined the opportunity to put on evidence to that effect, I agree with my colleagues that we must assume no gesture was made. *Ante* at 792. What we confront in this case, then, is the statement "I have a gun" standing alone. Given the absence of the additional facts present in our prior cases, and the limitation inherent in our pronouncement that "I have a gun" *can* constitute an express threat of death, it is not at all clear to me why Judge Alesia was compelled to conclude that Carbaugh's statement met the requirements of the guideline.

Judge Alesia was careful to note the distinctions between this case and its predecessors. In contrast to both *Jones* and *Robinson,* Carbaugh "did not express any readiness or willingness to use his weapon against the teller" (Sentencing Tr. 17); "[h]e simply stated that he had a gun" (*id.*). *Hunn,* too, presented a distinct set of circumstances:

> In *Hunn* the robber warned the teller not to pull any tricks, that he was watching, as he pretended to point a gun at the teller. Those words and conduct clearly were intended to make the teller think that he had a gun trained on her and that if she pulled any tricks, quote, unquote, she would be shot.

> In this case, in contrast, the defendant simply stated he had a gun but did not otherwise warn or threaten the teller, and he did not act as if he had a gun pointed at the teller.

Sentencing Tr. 18. Judge Alesia acknowledged that Carbaugh's conduct may have constituted an implied threat to the teller, but in his view it did not constitute an "express" threat—it was not "clear," "definite," "explicit," "plain," "direct" or "unmistakable." Sentencing Tr. 20, citing BLACK'S LAW DICTIONARY 580 (6th ed.1990). He noted that Judge Williams had reached the same conclusion based on similar facts in *United States v. Springer,* No. 96 CR 478, 1997 WL 160755 (N.D.Ill. April 4, 1997).

Granting Judge Alesia's careful analysis the due deference to which it is entitled, I do not see where it is that he erred. My colleagues emphasize that a robber's declaration that he is armed increases the teller's fear of death. *Ante* at 794. Again, I do not disagree. But does that statement represent an express threat of death, designed to instill in the victim a *significantly* greater of fear than that usually attending robbery? See Application Note 6. Even if we accept that "I have a gun" can be construed as an express threat, I cannot accept that it *must* be so construed as a matter of law, which is essentially what my colleagues appear to be saying. *See ante* at 795 ("we have no doubt that Carbaugh's statement would cause a reasonable teller to fear death").

The effect of the court's holding is to read "express"out of the guideline. That is a step our prior cases never purported to take. We have never said anything more than what common sense tells us-that a death threat can be expressed through a variety of words and gestures, not just by saying "I will kill you." Today, however, the court holds that the threat need not be *expressed* in any fashion, so long as the teller could *infer* that her life is in danger. With all due respect to my esteemed colleagues, I cannot reconcile that approach with the plain language of the pre-amendment version of the guideline.

The court's holding might well be defensible under the new version of the guideline, which notably omits the requirement that the threat be "express." The amended version, however, did not take effect until several months after the district court sentenced Carbaugh. My colleagues indicate that we need not consider whether the revision is substantive (in which case we would look solely to the pre-amendment version) or clarifying (in which case we could look to the amended version for guidance), because the amendment simply adopts the prior view of this circuit. *Ante* at 793; *see* U.S.S.G. § 1B1.11(b)(2); *United States v. Caicedo,* 937 F.2d 1227, 1234–35 (7th Cir.1991). But as I have indicated, we have never until today held that an *inferred* threat is sufficient to trigger the two-level enhancement; dropping the requirement that the threat be express,

which is what the amendment accomplishes, thus represents a significant and substantive departure from the case law of this circuit. Eliminating any doubt as to the nature of the change is the revision in the accompanying commentary. To qualify for the two-level enhancement, the robber's threat need no longer instill in the victim "significantly greater fear than that necessary to constitute an element of the offense of robbery"; it is instead sufficient now if the robber's words and/or conduct instill "a fear of death." *See* U.S.S.G.App. C, Amendment 552 (effective Nov. 1, 1997); § 2B3.1(b)(2)(F), comment. (n.6) (Nov.1997). The sweep of the enhancement is thus much broader than it was before, confirming that the change is substantive rather than clarifying. Consequently, the new version of the guideline does not support the court's holding in this pre-amendment case.

The Sentencing Guidelines have greatly complicated the task of sentencing judges. It is not at all unusual for judges to be faced with multiple disputes over the application of various sentencing enhancements and reductions in one case. Resolving such disputes may require briefing from the parties, hours of legal research, and in some cases lengthy evidentiary hearings. Looking at the record in this case, I am impressed with the care that Judge Alesia took in addressing the issue before us. In announcing his ruling, he reviewed the language of the guideline and the commentary, he surveyed our precedents on the subject, and then he methodically outlined his reasons for concluding, under the particular circumstances of this case, that Carbaugh's declaration that he possessed a gun was not sufficient to convey an express threat of death. Sentencing Tr.15–21. His holding was not categorical; he did not suggest that "I have a gun" could never be construed as a death threat for purposes of the guideline. Instead, he simply considered Carbaugh's statement in context 'and concluded that under the circumstances it did not reasonably convey a threat to kill. We owe Judge Alesia's thoroughly reasoned application of the guideline "due deference," 18 U.S.C. § 3742(e), and granting him that deference I believe the correct result would be to affirm the sentence he imposed.

With the utmost respect to my two colleagues, I therefore dissent.